**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**SANDRA LESTER,**

                  **Plaintiff(s),**        **CASE NUMBER: 04-74109**
                                            **HONORABLE VICTORIA A. ROBERTS**

**v.**

**WAYNE COUNTY, a Michigan**
**Municipal Corp.,**

                  **Defendant(s).**
_____/

**ORDER CONCERNING (1) DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT AND (2) DEFENDANT'S MOTION**
**IN LIMINE TO PRECLUDE THE PLAINTIFF FROM**
**INTRODUCING EXPERT TESTIMONY AT TRIAL**

**I.    INTRODUCTION**

       This matter is before the Court on Defendant's Motion for Summary Judgment and Defendant's Motion in Limine to Preclude the Plaintiff from Introducing Expert Testimony at Trial.  For the reasons stated, Defendant's Motion for Summary Judgment is **GRANTED**.  Defendant's Motion in Limine is **MOOT**.

**II.    BACKGROUND**

       Plaintiff Sandra Lester brings this action against her former employer, Defendant Wayne County, for alleged violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq.*  Plaintiff worked for Defendant in the Real Estate Unit of the Wayne County Treasurer's Office as a temporary, contract employee from February 1999 through November 2000.  On November 20, 2000, Plaintiff became a full-time,

1

permanent employee.

On October 15, 2001, Plaintiff went into work and advised three of her superiors that she could not work because she did not feel well, and because she was overwhelmed with concerns about several members of her family, including her mother. One of the persons Plaintiff spoke with, Lynn Ciucci, was a payroll officer.  During her meeting with Plaintiff, Ciucci says that called Frances Ingram in the personnel department to find out whether Plaintiff was eligible for a leave of absence under FMLA. Because Plaintiff had not been a full-time permanent employee for a full year, Ingram advised that Plaintiff was not eligible for leave.  Ciucci says that she relayed this to Plaintiff, but allowed her to go home.  There is no indication, however, that Ciucci or any other supervisor that Plaintiff spoke with before she left for the day talked to her about when she was expected to return.  Ciucci only says that she told Plaintiff to check with her union representative regarding other possible options, and, if Plaintiff received medical attention, to forward the medical records to Ciucci so that she could review them for other options.

Plaintiff essentially denies that Ciucci told her that she was ineligible for FMLA during their discussion on October 15th.   Rather, at the conclusion of their meeting, Plaintiff claims to have been under the impression that her eligibility for FMLA leave for herself and so that she could care for her mother was an open question about which Ciucci would continue to inquire.

After Plaintiff left, she received physical and psychological treatment.  Plaintiff was evaluated at the Community Health and Social Services ("CHASS") clinic on October 15, 2001.  She says that she was treated for acute hypertension and referred to

2

the Cabrini Clinic for psychological services.  It appears from the note written by the treating physician at CHASS that Plaintiff was deemed to need one week off work to get her blood pressure under control.[1]  Plaintiff treated at the Cabrini Clinic from October 24 through October 31, and was deemed unable to return to work until November 1, 2001. Pl. Exh. 3.

There is no evidence, however, that Plaintiff communicated with her supervisors for over one week after she left regarding her status and intended return date. Consequently, she was fired on October 23 for being absent without leave.  Ciucci testified that Plaintiff was fired because she failed to appear for work or submit any medical documentation justifying the absence.

Plaintiff contends, however, that Ciucci did not tell her that she was required to present medical certification either during their conversation on October 15th or in a telephone message Ciucci left for her on October 22nd.  In the telephone message, Plaintiff says Ciucci simply indicated that she was calling to check on Plaintiff.  Plaintiff says that Ciucci never told her whether she was eligible for FMLA leave or advised her about the FMLA policy.

It is not clear when or how Plaintiff was informed of her termination, or when she first offered medical documentation of her illness.  In her brief, Plaintiff claims that she obtained medical certification and called her supervisor, Doris Wilson, around October 31st.  Plaintiff says Wilson directed her to another supervisor, Pam Travis, who refused to accept Plaintiff's medical statement, told her that she was ineligible for FMLA until

_____

[1]The note is written in shorthand and states that "Ms. Lester was eval in our clinic on 10/15 & will be off x 1 wk for BP control."  Pl. Exh. 3.

November 20, 2001, and demanded that she return to work immediately.  Plaintiff says she told Travis that she was not mentally capable of returning to a position that required her to work with the public.  Pl. dep. at pp. 126-127.  As an alternative, Plaintiff says she offered to return to work in a position that did not require contact with the public.  *Id* at 127.  Travis rejected the offer.

This version of events, however, suggests that neither Plaintiff nor Travis was aware on October 31st that Plaintiff had been fired on October 23rd.  It is also inconsistent with Plaintiff's deposition testimony.  She said that she only called Wilson to find out about Wilson's earlier conversation with her (Plaintiff's) daughter.  Pl. Dep. at p. 124.  Plaintiff did not indicate in her deposition that she mentioned medical documentation to either Wilson or Travis.  And, the only documentation Plaintiff could have had was the note from CHASS, which was dated October 31st.  The note from the Cabrini Clinic was not prepared until November 7, 2001.  Pl. Exh. 3.

There is evidence that Plaintiff attempted to submit medical documentation to Ciucci.  But, Ciucci testified that Plaintiff did not do so until sometime after she was fired.  Ciucci declined to accept the documents, advised Plaintiff that the matter was out of her (Ciucci's) hands, and referred Plaintiff to another staff person.

 Plaintiff grieved her discharge in November 2001.  During the course of the grievance, Defendant says it determined that, on October 15th, Plaintiff had in fact accrued sufficient time to request FMLA leave.  It is not clear who made the determination that an error was made or when, but, on April 5, 2002, John Miles, the Assistant Director of Labor Relations, offered to process Plaintiff's request retroactively.  He sent Plaintiff a Certification of Health Care Provider form to be completed by

Plaintiff's health care provider.

Plaintiff's treating physician completed the Certification on April 15, 2002.  The doctor (whose name is not clear) indicated that Plaintiff only needed to be off work from October 15, 2001 through October 19, 2001 to stabilize her blood pressure and receive a psychological evaluation relative to family issues.  Def. Exh. H.  Plaintiff did not submit a Certification from the Cabrini physician.  Plaintiff also did not submit a Certification or other documentation substantiating her claimed need to care for her mother.  She says, however, that she was not asked to present documentation regarding her mother, and that Miles only sent her one Certification form to complete.

Even so, Miles, apparently satisfied that Plaintiff's medical documentation established a qualifying illness, negotiated with Plaintiff's union representative to settle Plaintiff's grievance.  Negotiations resulted in a written offer from Miles to rescind Plaintiff's termination, grant her leave without pay from October 23, 2001 through August 11, 2002, and allow Plaintiff to return to work in a different department, but at the same classification, rate of pay and benefits:

> The separation notice issued to Sandra Lester, . . . effective October 23, 2001, is rescinded and replaced with a [sic] leave without pay for the period October 23, 2001 through August 11, 2002.  This agreement provides for no back pay or benefits except Ms. Lester shall be paid the contractual general pay increase for the period December 1, 2000 through October 23, 2001.  Ms. Lester may retain any unemployment compensation received during her absence.

Def. Exh. M.  The first offer required Plaintiff to return to work in July 2002.  The offer was subsequently revised at least twice to extend the date of Plaintiff's return until September 2002.

Because the offers did not include back pay, Plaintiff did not sign any of them or

return to work.  It appears that Plaintiff communicated her desire for back pay to her union representative.  *See* Pl.'s Sept. 20, 2002 letter at Def. Exh. O.  Miles testified, however, that he was not aware that the terms offered were unsatisfactory.  In fact, until she failed to appear on the scheduled return date, he said that he was under the impression that he and Plaintiff had reached an agreement. So, a few months after the last negotiated date, Miles advised Plaintiff in a letter dated December 20, 2002, that her inaction was deemed a voluntary resignation.  Thereafter, Plaintiff completed the grievance process through arbitration but was unsuccessful.

In her Amended Complaint, Plaintiff alleges that Defendant willfully interfered with her FMLA rights with respect to her illness and her need to care for her mother. Defendant requests summary judgment on both claims.

**III.    STANDARD OF REVIEW**

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995).  A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v.*

6

*Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Snyder v. AG Trucking Co.*, 57 F.3d 484, 488 (6th Cir. 1995). To meet this burden, the movant may rely on any of the evidentiary sources listed in Rule 56(c). *Cox*, 53 F.3d at 149. Alternatively, the movant may meet this burden by pointing out to the court that the nonmoving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case, and on which that party will bear the burden of proof at trial. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989). The moving party does not, however, have to support its motion for summary judgment with evidence negating its opponent's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

Once the moving party has met its burden, the burden shifts to the nonmoving party to produce evidence of a genuine issue of material fact. Rule 56(e); *Cox*, 53 F.3d at 150. The nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of its complaint. *Copeland*, 57 F.3d at 479. The mere existence of a scintilla of evidence to support the nonmoving party position will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party. *Snyder*, 57 F.3d at 488; *Tolton*, 48 F.3d at 941.

## IV.    APPLICABLE LAW AND ANALYSIS

The FMLA entitles an eligible employee to a total of 12 weeks leave during any 12-month period to care for a spouse, child or parent with a "serious health condition," or if the employee has a "serious health condition" that renders the employee unable to

7

perform the functions of her job.  29 U.S.C. §2612(a)(1)(C)-(D).  A "serious health condition" is a condition that requires inpatient care or continuing treatment by a health care provider.  29 C.F.R. §825.114(a).

To invoke the protections of the FMLA, an employee must give his employer adequate notice and a qualifying reason for requesting FMLA leave.  *Hoge v Honda of America Mfg., Inc.,* 384 F.3d 238, 244 (6ᵗʰ Cir. 2004); *Cavin v Honda of Am. Mfg.,* 346 F.3d 713, 723-724 (6ᵗʰ Cir. 2003).  Notice may be adequate even if the employee does not expressly reference FMLA when making her request.  "[A]n employee gives sufficient notice when he provides enough information for the employer to reasonably conclude that an event described in §2612(a)(1) has occurred."  *Perry v Jaguar of Troy*, 353 F.3d 510, 513 (6ᵗʰ Cir. 2003).

An employer may require that the employee submit medical certification supporting the request.  29 U.S.C. §2613(a).  The employer's request for medical certification, however, must be in writing and give specific notice of the employee's obligation to provide certification and the consequences for failing to do so.  *See* 29 C.F.R. §§825.301(b), 825.305(a); *Perry*, 353 F.3d at 514; *Rodriguez v Ford Motor Company*, 382 F.Supp. 2d 928, 935 (E.D. Mich. 2005).

Persons claiming violation of the FMLA can proceed under two theories--the "interference" theory and the "retaliation" theory.  The interference provision provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. §2615(a)(1).  To state a *prima facie* interference claim a plaintiff must show that:

1) she is an eligible employee; 2) defendant is a covered employer;

8

> 3) she was entitled to leave under the FMLA; 4) she gave defendant notice of her intent to take leave; and 5) defendant denied her FMLA benefits to which she was entitled.

*Hoge,* 384 F.3d at 244; *Cavin*, 346 F.3d at 719.

The retaliation provision provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. §2615(a)(2). To state a retaliation claim, a plaintiff must show that: "1) she availed herself of a protected right under the FMLA; 2) she was adversely affected by an employment decision; and 3) there was a causal connection between her protected activity and defendant's adverse employment actions." *Jeremy v Northwest Ohio Development Center,* 33 F.Supp.2d 635, 639 (N.D. Ohio 1999).

Plaintiff does not explicitly state in either her Amended Complaint or brief which theory she is proceeding under. But, under either theory, Plaintiff must prove that the alleged violations were "willful," because her claims were filed beyond the general two-year statute of limitations for alleged FMLA violations; the statute of limitations is extended to three years for willful violations. 29 U.S.C. §2617 (c)(1)-(2).

Plaintiff has not presented sufficient evidence to raise a genuine issue of material fact on either of her claims.

## A.    PLAINTIFF'S ILLNESS

Defendant contends that Plaintiff's request for FMLA leave was untimely, because she failed to give notice prior to October 15th. When the need for leave is foreseeable, an employee must give at least 30 days before the date leave is to begin. 29 U.S.C. §2612(e)(2). "If 30 days notice is not practicable, such as because of a lack

of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable." 29 C.F.R. §825.302(a).  "'As soon as practicable' means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case. For foreseeable leave where it is not possible to give as much as 30 days notice, 'as soon as practicable' ordinarily would mean at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee."  29 C.F.R. §825.302(b).

Defendant argues that there is no evidence that Plaintiff's medical condition was new to her or was an emergency which exempted her from giving at least two days advance notice.  Defendant essentially suggests that Plaintiff's failure to strictly observe the time-frames set forth in the FMLA regulations, despite the fact that it admittedly knew that she was requesting FMLA leave, precludes her from asserting an FMLA violation.  However, Defendant cites no authority in support of this proposition, and relevant case law suggests that the timeliness of an employee's notice should only be considered with regard to when and whether sufficient *substantive* notice was given to allow the employer to timely assess the FMLA claim.

Specifically, in *Brenneman v Medcentral Health System*, 366 F.3d 412 (6th Cir. 2004), *cert. den.,* 543 U.S. 1146 (2005), plaintiff called into work and said that he could not come in that day because he was not doing well.  Plaintiff was diabetic and had an episode that prevented him from coming to work.  But, he did not mention his diabetes when he called in or when he returned to work the next two days.  Defendant was aware that plaintiff was diabetic.  But, plaintiff had been chronically absent for non-

10

diabetic reasons.  Therefore, there was no reason for defendant to presume that the absence was related to plaintiff's diabetes.  Four days later, plaintiff was called into a meeting with his supervisors about his absences.  During the meeting, plaintiff still did not mention that his latest absence was related to his diabetes.  The absence triggered a suspension under defendant's attendance policies.  Because it was plaintiff's third suspension within five years, he was fired.  The next day, plaintiff's wife called and told the vice president of human resources that plaintiff's absence was related to his diabetes.  Plaintiff did the same during an exit interview the following day, six days after his absence, and presented medical documentation to support the claim.  Defendant, nevertheless, finalized plaintiff's termination.

The *Brenneman* plaintiff filed suit alleging, *inter alia*, that defendant unlawfully interfered with his exercise of FMLA rights by counting his final FMLA-qualifying absence against him.  The district court granted defendant summary judgment on the ground that plaintiff failed to give defendant sufficient notice of an FMLA-qualifying reason for his absence.

The Sixth Circuit affirmed.  The Court noted that the information plaintiff and his wife eventually gave was substantively sufficient to put defendant on notice that plaintiff's absence was due to a serious health condition.  But, the Court found that the notice was, nevertheless, untimely because there was nothing to prevent plaintiff from notifying defendant of the reason for his absence within two days afterwards.  Plaintiff also did not mention it four days later during the meeting that was held about his absences.  The *Brenneman* Court found that plaintiff's belated notice was insufficient since he had ample opportunity immediately after the absence and before he was fired

11

to put defendant on notice that it was an FMLA-qualifying event.

Here, Defendant admits that Ciucci immediately understood that Plaintiff's claimed inability to work because of her physical and/or mental illness may have qualified her for FMLA leave. Defendant was, therefore, aware before Plaintiff's absence and termination that her request for leave was within the purview of the FMLA. Unlike the employer in *Brenneman,* Defendant was not hindered in its ability to timely assess Plaintiff's claim because of the lack of advance notice. Therefore, the Court finds that Plaintiff gave Defendant sufficient notice of an FMLA-qualifying reason for her subsequent absence. Summary judgment on this ground is not warranted.

Plaintiff's claim, nevertheless, fails because there is no evidence that the alleged violation was willful. The FMLA does not define willfulness. But, courts interpret willful to mean a knowing or reckless disregard for the requirements of the FMLA. *Hoffman v Professional Med Team*, 394 F.3d 414, 417 (6th Cir. 2005); *Rodriguez*, 382 F.Supp. 2d at 936. The *Hoffman* Court noted that courts have found willfulness under analogous employment statutes when an employer deliberately chose to avoid researching the statute's terms or affirmatively evaded them. 394 F.3d at 419.

In this case, there is no basis for reasonable jurors to find that Defendant's erroneous assertion in October 2001 that Plaintiff was not eligible to request leave under FMLA was willful. There is no evidence that Defendant knew Plaintiff was eligible for FMLA leave but rejected the request anyway. Ciucci testified that she was under the mistaken impression that Plaintiff was not eligible because Plaintiff had less than 12 months as a permanent employee, and that her belief was confirmed by the person whom she consulted in the personnel department, Frances Ingram. At most, this error

12

by Ciucci and Ingram demonstrates negligence.

Plaintiff contends that Defendant's appointment of Ciucci as the designee responsible for establishing an employee's FMLA eligibility, although Ciucci testified that she was not trained in its implementation and had little knowledge about it, shows a reckless disregard by Defendant.  However, as Defendant points out, Plaintiff offers no evidence that Ciucci was the person responsible for establishing an employee's FMLA eligibility.  In fact, Ciucci's unrefuted testimony was that she called Ingram because she (Ingram) was the person to confirm or deny eligibility.  Def. Exh. I at p. 16.

There is also no merit to Plaintiff's assertion that--evidence that the Chief Deputy County Treasurer, Leonard Remick, did not want Plaintiff reinstated to the Treasurer's Department--supports a finding of intentional or reckless disregard.  Plaintiff refers to a letter dated March 15, 2002 from Labor Relations Analyst Deanna Smith to Remick.  Pl. Exh. 4.  In the letter, Smith summarizes conversations between herself,  Remick and others regarding Plaintiff's termination.  She indicates that, sometime between February and March 2002, Remick was advised that Plaintiff was eligible for FMLA in October 2001.  Per Smith, Remick initially indicated that he was willing to allow Plaintiff to return to the Treasurer's Office but later changed his mind after she gave allegedly false testimony during a grievance hearing.

Reasonable jurors could not find willfulness based on this letter because there is no evidence that Defendant continued to deny Plaintiff's entitlement to leave because of Remick's alleged unwillingness to accept her back in his department.  Less than one month after Smith's letter, Miles began processing Plaintiff's request for leave.  After her claim was substantiated, Miles offered Plaintiff a position in the Sheriff's Department

13

that was equivalent to the one she held in the Treasurer's Office.  The offer was permissible under the FMLA because, upon return from leave, an employee is entitled to be restored to the position she held when leave commenced *or* an equivalent position.  29 U.S.C. §2614(a)(1)(A)-(B).  And, there is no evidence that Remick's alleged feelings towards Plaintiff were ever a factor in the decision to either grant or deny Plaintiff's leave request.  Remick's feelings may account for Miles' offer to bring Plaintiff back in another department.  But, Defendant was not obligated to offer Plaintiff the exact position if an equivalent position was available.

For the reasons stated, Defendant's motion is granted concerning Plaintiff's request for leave based on her own illness.

### B.    PLAINTIFF'S MOTHER

Plaintiff's claim based on her need to care for her mother fails as well, because there is no evidence that Plaintiff was entitled to FMLA leave for this purpose.  Plaintiff can only assert a cause of action for Defendant's failure to grant her leave to care for her mother if her mother had a serious health condition that required Plaintiff's care. *See Perry*, 353 F.3d at 514 (affirming summary judgment where plaintiff failed to present evidence that his son suffered from a serious health condition).

There is no evidence that Plaintiff's mother suffered from a serious health condition which would have entitled Plaintiff to take leave.  Plaintiff did not present any such evidence at the time of her request and no evidence is presented to the Court now.  In fact, when Miles asked Plaintiff to provide medical documentation for her absence in October 2001, she only submitted Certification pertaining to her own health.

Incredulously, Plaintiff suggests that she was prevented from asserting a second

14

claim regarding her mother because Defendant only sent her one Certification form.

This claim is patently disingenuous.  Miles did not indicate in his letter to Plaintiff that

she could only submit one request.  And, the form he sent to Plaintiff included a section

that specifically addresses leave requests to care for a family member.  *See* Def. Exh.

G, ¶8.  Certainly, Plaintiff could have requested or made additional copies of the

Certification form.

Defendant's motion is granted with regard to Plaintiff's request for leave to care

for her mother.

## V.    CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED IN ITS ENTIRETY**.

Defendant also filed a Motion in Limine to Preclude the Plaintiff from Introducing Expert

Testimony at Trial.  In light of Judgment entering in favor of Defendant, this motion is

**MOOT**.

**IT IS SO ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  May 23, 2006

| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 23, 2006. |
| --- |
| s/Linda Vertriest |
| Deputy Clerk |

15

16